## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JAMES E. STOTLER,

     Plaintiff,

         v.

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS,
ROBERT SHANNON and ERNEST
MACON,

     Defendants.

CIVIL ACTION NO. 3:08-CV-1441

(JUDGE CAPUTO)

## MEMORANDUM

Presently before the Court are Defendants' Motion for Summary Judgment and Motion to Strike Portions of Plaintiff's Counter-Statement of Material Facts. For the reasons discussed below, Defendants' Motion for Summary Judgment will be granted and Defendants' Motion to Strike will be denied. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1367.

## BACKGROUND

**1.    FACTUAL BACKGROUND**

    **A.    February 3, 2007 Shakedown and Injury**

Plaintiff James E. Stotler, a Caucasian male, began working for Defendant Pennsylvania Department of Corrections ("the D.O.C.") in 1991. (Stotler Dep. 13:7-10, April 30, 2009.) In approximately December 2005, Stotler achieved the rank of Sergeant. (Stotler Dep. 16:16-17.) On February 3, 2007, Stotler was working in the Restricted Housing Unit ("RHU") at SCI-Frackville. (Stotler Dep. 30:15-31:5.) On that day a shakedown was planned

for the RHU.[1] (Barnes Dep. 27:7-13, April 30, 2009.)

During the shakedown, Stotler and Corrections Officers Robert Santangelo and John Davison, all Caucasian males, attempted to remove inmate Aasim Nash, an African-American male, from his cell. (Barnes Dep. 34:7-9.) As the officers removed Nash from his cell, he became verbally abusive toward them. (Barnes Dep. 33:16-21.) For security purposes, the officers handcuffed Nash and locked him in the shower room while they searched his cell. (Barnes Dep. 35:10-37:1.) After the cell search was completed, Sergeant Stotler attempted to remove Nash from the shower room; as Stotler unlocked and opened the gate to the shower room, Nash kicked it closed, striking Stotler in the hand. (Stotler Dep. 49:3-8, April 30, 2009.) Nash then leaned against the door to keep it closed, causing Stotler to push the door open so that he could secure Nash. (Stotler Dep. 52:22-53:1.)

At this point the versions of events diverge. Stotler says that Nash fell forward toward the wall when he pushed the door open. (Stotler Dep. 55:6-9). Some corrections officers and Nash claim that Nash fell backward against the wall, and Nash claims that he hit the back of his head after falling. (Davison Dep. 44:6-12, May 1, 2009; Doc. 30, Exs. M, N, FF.) Everyone, including Nash, states that Nash spit in Stotler's face when Stotler came into the shower room to retrieve Nash. (Doc. 30, Ex. FF.) Nash claims that Stotler then punched him in the eye; this story was corroborated by another inmate who witnessed the incident. (Doc. 30, Ex. FF; Doc. 16, Ex. 4.) All the corrections officers claim that Stotler did not punch Nash or that they did not see what happened and that the injury to Nash's eye was not noticed by any of them until Captain Michael Barnes spoke with Nash after being returned to his cell.

---

[1] A shakedown is a routine procedure on the RHU, wherein corrections officers search inmates' cells for contraband. (Barnes Dep. 18:16-19:1.)

(Stotler Dep. 61:2-19; Barnes Dep. 43:25-45:2.)

As a result of this incident, Nash was brought to the medical unit to have his eye examined. Upon examination, Nash vomited "a very large amount of partially digested food with some blood evident;" it was recommended that he be transported to the emergency room. (Doc. 16, Ex. 3.) At the hospital it was confirmed that Nash had a fractured medial wall of his left orbit and had bruised the back of his left eye. (Doc. 16, Ex. 12.) Nash told the treating doctors that he had been punched in the eye. (Doc. 16, Exs. 11, 12.) The doctors believed that Nash's injury was consistent with being punched in the face or eye. (Doc. 16, Exs. 11, 12.) One doctor, while emphasizing that he was not a forensic expert, opined that if Nash had hit a cement wall he likely would have exhibited more facial trauma on his forehead, cheek and chin. (Doc. 16, Ex. 11.)

## B. Office of Professional Responsibility Investigation

On February 5, 2007 the Director of the Office of Professional Responsibility ("OPR"), Michael Wolanin, authorized an investigation into the incident following a request from SCI Frackville Superintendent, Defendant Robert Shannon. (Doc. 30, Ex. II.) Both Shannon and Wolanin are Caucasian males. (Doc. 16, ¶¶ 2, 23.) Shannon claims that D.O.C. policy requires an investigation any time there is an allegation of abuse by D.O.C. staff, and that he had concerns about the manner in which Nash sustained such a severe injury and how the incident was dealt with by his staff. (Doc. 16, Ex. 2.)

The investigation was conducted by Defendant Ernest Macon, Jr. and Adam D. Hough; Hough is a Caucasian male and Macon is an African-American male. (Doc. 30, Ex. II; Doc. 16, ¶¶ 2, 24.) In the course of the investigation, Defendant Macon and Mr. Hough

interviewed Nash, Barnes, Stotler, the doctors who treated Nash, the inmates who witnessed the events in question, and the corrections officers on the RHU at the time of the shakedown. Stotler testified that Macon conducted his interview, but that he did not recall any of the questions asked at the interview. (Stotler Dep. 70:1-21.) The investigation concluded that Stotler had violated D.O.C. policy by using excessive force on an inmate. (Doc. 30, Ex. II.) Stotler further testified that he had no problem with the OPR investigators. (Stotler Dep. 87:18-20.) Hough submitted the investigation report, and it was reviewed and signed by Defendant Macon. (Doc. 30, Ex II.)

On March 6, 2007, OPR Director Wolanin issued an executive summary of the OPR investigation. (Doc. 16, Ex. 2.) The summary concluded that all of the officers had slightly different stories and that their stories were "not realistic or believable." (Doc. 16, Ex. 2.) As such, a pre-disciplinary conference ("PDC") was recommended for Stotler and Barnes. (Doc. 16, Ex. 2.) On March 15, 2007,[2] a letter was sent to Stotler telling him that a PDC was scheduled for March 28, 2007 and listing the allegations against him and the specific D.O.C. policy violations he committed; Stotler signed the letter acknowledging notice of the PDC. (Doc. 30, Ex. NN.)

On April 3, 2007, the PDC committee affirmed the charges against Stotler. (Doc. 30, Ex. RR.) After reviewing the documentation surrounding the incident with Nash, D.O.C. Director of Human Resources Timothy Musser directed Defendant Shannon to dismiss Plaintiff Stotler. (Doc. 30, QQ.) Stotler was terminated on April 18, 2007. (Stotler Dep. 83:6-8; Doc. 30, Ex. YY.) On April 18, 2007, Stotler filed a grievance alleging that he was

---

[2] The letter is actually date March 15, 2006. However, this appears to by a typographical error as all the other correspondence in this case is dated 2007.

improperly terminated. The grievance was settled on November 16, 2007; as part of the final resolution Stotler was reinstated without backpay, received seniority credit for the time that he was discharged from employment, credited with leave he would have accrued, and all record of discipline was removed from Stotler's record. (Doc. 30, Exs. Z, AAA.)

### C.    Stotler's Replacement/ Previous Discipline of Other Corrections Officers

Stotler alleges that he was replaced by a younger individual after his termination. (Doc. 30, Ex. KKK.) Stotler was born on December 16, 1962; Stotler claims that his permanent replacement, Joseph Hannon, was born on February 9, 1971. (Doc. 30, Ex. KKK.) There is also evidence on the record alleging that Corrections Officer Barbara Brown was allowed to resign from her position after she was caught bringing contraband into the prison; Barbara Brown is African American. (Doc. 30, Ex. KKK.)

### D.    Procedural History

Plaintiff filed a Complaint with the Equal Employment Opportunity Commission and the Pennsylvania Human Relations Commission; having fulfilled the administrative prerequisites, Plaintiff received a right-to-sue letter on April 28, 2008. (Compl. ¶ 4.) Plaintiff filed a Complaint on July 24, 2008 that was dismissed without prejudice for failure to aver the source of federal subject matter jurisdiction. *Stotler v. Pennsylvania Dept. of Corrections*, No. 3:08-CV-1389, slip. op. at 1-2 (M.D. Pa. July 31, 2008). On August 1, 2008, Plaintiff filed the instant Complaint. (Doc. 1.)

Plaintiff's Complaint brings causes of action against the D.O.C., Defendant Shannon and Defendant Macon for violation of 42 U.S.C. § 1981 and 42 U.S.C. § 1983 (Count I), violation of 42 U.S.C. § 1985 (Count II), and violation of the Pennsylvania Human Relations

Act ("PHRA") (Count V), against the D.O.C. only for violations of Title VII (Count III) and hostile work environment in violation of Title VII (Count IV), and against Shannon and Macon only for Civil Conspiracy (Count VI). On July 13, 2009, Defendants filed a Motion for Summary Judgment. (Doc. 15.) That motion has been fully briefed and is now ripe for disposition.

## LEGAL STANDARD

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. *Id.* An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id*.

Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law. *See* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2727 (2d ed. 1983). The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the Court that "the nonmoving party has failed to make a sufficient showing of an essential

6

element of her case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party. *White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988). Once the moving party has satisfied its initial burden, the burden shifts to the nonmoving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *Anderson*, 477 U.S. at 256-57.

The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

## DISCUSSION

I.    **D.O.C.**

A.    **Count I: 42 U.S.C. § 1983 and 42 U.S.C. § 1981**

Stotler alleges that the D.O.C. violated § 1983, which provides that:

> Every person who, under color of any statute, ordinance, regulation, custom or usage . . . subjects, or causes to be subjected, any citizen of the United States or other persons within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

Two elements must be present in order to state a § 1983 claim: (1) the conduct complained of must have deprived the plaintiff of rights, privileges and immunities secured

7

by the Constitution or laws of the United States; and (2) the conduct must have been committed by a person acting under color of state law. *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 923 (1982); *Kost v. Kozakiewicz*, 1 F.3d 176, 184 (3d. Cir. 1993).

States are not "persons" within the meaning of § 1983 and, therefore, cannot be among those held liable for violations of the civil rights statute. *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 697 (3d Cir. 1995). Likewise, § 1981 does not abrogate Eleventh Amendment immunity for states. *Chinn v. City University of New York*, 963 F. Supp. 218, 224 n.1 (E.D.N.Y. 1997). In addition, the Eleventh Amendment provides states with immunity from suit in federal court. *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 58 (1996). This immunity is jurisdictional in nature. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 n.8 (1984). The state may waive its Eleventh Amendment immunity and consent to be sued. *See Alden v. Maine*, 527 U.S. 706, 755 (1999). Congress may also abrogate the immunity, but only if it has "unequivocally expressed its intent" to do so and has acted "pursuant to a valid exercise of power." *Seminole*, 517 U.S. at 55 (citations omitted).

The Pennsylvania D.O.C. is an arm of the state and is not a "person" within the meaning of § 1983 and may not be held liable under the civil rights statute. *See, e.g., Santiago v. New York State Dept of Correctional Services*, 945 F.2d 25, 28 n.1 (2d Cir. 1991) (citing *Pennhurst State School and Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)). Additionally, Pennsylvania has expressly withheld consent and has not waived its Eleventh Amendment immunity. *See* 42 PA. CONS. STAT. ANN. § 8521(b) (2004). Thus, the § 1981 and 1983 claims brought against the Pennsylvania D.O.C. are barred by the Eleventh Amendment and summary judgment will be granted for Defendant D.O.C. on Count I.

**B.     Count II: 42 U.S.C. § 1985**

8

Similarly, states and their agencies are not "persons" for the purposes of 42 U.S.C. § 1985.[3] *Rode v. Dellarciprete*, 617 F. Supp. 721, 722-723 (M.D. Pa. 1995). Therefore, Plaintiff's § 1985 claim against the D.O.C. is also barred and summary judgment will be granted in favor of Defendant D.O.C. on Count II.

### C.    Counts III and IV: Title VII Claims

A plaintiff seeking relief pursuant to Title VII must file a complaint in federal district court within ninety (90) days of receiving a right-to-sue-letter. *Burgh v. Borough Council of Borough of Montrose*, 251 F.3d 465, 470 (3d Cir. 2001). The 90-day statute of limitations has been strictly construed by the Third Circuit Court of Appeals. *Id.*

Generally speaking, the statute of limitations is not tolled when a complaint is subsequently dismissed without prejudice, and the complaint is treated as if it never existed. *Cardio-Medical Associates v. Crozer-Chester Med. Ctr.*, 721 F.2d 68, 77 (3d Cir. 1983). When a complaint is dismissed without prejudice after the statute of limitations has run, the plaintiff can no longer remedy the deficiency in the complaint and the order dismissing the complaint without prejudice becomes a final and appealable order. *Brennan v. Kulick*, 407 F.3d 603, 606 (3d Cir. 2005) (citing *Ahmed v. Dragovich*, 297 F.3d 201, 207 (3d Cir. 2002)). However, "when a complaint is filed within the statute of limitations but is subsequently dismissed without prejudice in an order containing conditions for reinstatement within a specified time period, the statute of limitations is tolled provided that the plaintiff meets those conditions." *Id.* at 607. In such cases, the order only becomes final when the time for amendment has expired or the plaintiff "declares its intention to stand on the complaint." *Id.*

---

[3] 42 U.S.C. § 1985 requires the action of "two or more persons."

In the instant case, the right-to-sue letter was issued on April 28, 2008. The first Complaint was filed on July 24, 2008, within the 90-day window prescribed by Title VII. However, that Complaint was dismissed without prejudice on July 31, 2008, which was outside the statute of limitations. The order dismissing the case without prejudice did not contain any conditions for amendment and, therefore, was a final and appealable order. Furthermore, the statute of limitations was not tolled by the filing of the original complaint and that pleading is treated as if it never existed. When Plaintiff filed the instant complaint on August 1, 2008, it was outside the limitations period for Title VII claims. As such, Plaintiff's Title VII claims are time barred and summary judgment will be granted on these claims.

### D.    Count V: PHRA Claims

"[T]he PHRA is to be interpreted as identical to federal anti-discrimination laws except where there is something specifically different in its language requiring that it be treated differently." *Fasold v. Justice*, 409 F.3d 178, 184 n. 8 (3d Cir.2005).[4] Thus, Stotler's claims of age discrimination will follow the caselaw surrounding the Age Discrimination in Employment Act ("ADEA") and his claims for race discrimination will proceed under the Title VII framework.

The initial burden is on the Plaintiff to make out a prima facie case of discrimination; if this is met, the burden shifts to Defendants to articulate a legitimate, non-discriminatory reason for the adverse employment decision. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). To satisfy its burden, Defendants need not prove that the articulated

---

[4]    Defendants argue that they are entitled to sovereign immunity on the PHRA claims. However, the PHRA makes it unlawful for an "employer" to discriminate based on age or race. 43 P.S. § 955(a). "Employer" is defined to include "the Commonwealth or any political subdivision or board, department, commission or school district thereof." 43 P.S. § 954(b). Thus, the PHRA clearly covers the D.O.C.

10

reasons actually motivated its conduct. *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994). Rather, Defendants must only introduce "evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason" for the adverse employment action. *Id.* Plaintiff then bears the burden of demonstrating that the alleged legitimate, nondiscriminatory reasons advanced by Defendants are but a pretext, aimed at concealing Defendants' discriminatory motives. *Ezold v. Wolf, Block, Schorr and Solis-Cohen*, 983 F.2d 509, 522 (3d Cir. 1992) (citing *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 257 (1981)). If, however, Defendants fail to satisfy this minimal burden of production, the Court must deny Defendants' motion in favor of Plaintiff. *Keller*, 130 F.3d at 1108.

To survive a summary judgment motion, Plaintiff must show pretext by presenting "some evidence, direct or circumstantial, from which a factfinder could reasonably either: (1) disbelieve [Defendants'] articulated reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of [Defendants'] action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994). If Plaintiff successfully points to evidence sufficient to discredit Defendants' tendered reasons, Plaintiff need not submit additional evidence beyond the initial prima facie case in order to survive summary judgment. *Waldron v. SL Indus., Inc.*, 56 F.3d 491, 495 (3d Cir. 1995). "[A]n employer would be entitled to judgment as a matter of law ... if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant ... evidence that no discrimination had occurred." *Goodman v. Pennsylvania Turnpike Commission*, 293 F.3d 655, 673 (3d Cir.2002).

### 1.    Age Discrimination

The ADEA provides: "It shall be unlawful for an employer . . . to discharge an

individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's age . . . ." 29 U.S.C. § 623(a). ADEA plaintiffs may establish a cause of action by demonstrating disparate treatment. *Monaco v. Am. Gen. Assurance Co.*, 359 F.3d 296, 300 (3d Cir. 2004). Moreover, in such instances, proof of discriminatory intent is a crucial component. *Id.* at 300 (citing *Hazen*, 507 U.S. at 610)). ADEA plaintiffs with only indirect evidence of discriminatory intent claiming disparate treatment must proceed under the *McDonnell Douglas* burden-shifting framework. *Id.* In the instant matter, Plaintiff offers only indirect evidence of Defendants' alleged discriminatory intent. Consequently, analysis of Plaintiff's age discrimination claims must proceed under the *McDonnell Douglas* analytical framework.

Plaintiff may establish his prima facie case by showing: (1) membership in a protected group, i.e. at least forty (40) years of age; (2) qualification for the job in question; (3) an adverse employment action; and (4) circumstances supporting an inference of discrimination. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510 (2002). "Common circumstances giving rise to an inference of unlawful discrimination include the hiring of someone not in the protected class as a replacement or the more favorable treatment of similarly situated colleagues outside of the relevant class." *Bullock v. Children's Hosp. of Phila.*, 71 F. Supp. 2d 482, 487 (E.D. Pa. 1999). "Although a plaintiff may make out a prima facie case with such evidence . . . neither of these is required." *Id.* (citing *Pivirotto v. Innovative Sys.*, 191 F.3d 344, 356-57 (3d Cir. 1999)). Thus, the analysis of whether an inference of discriminatory animus has been raised is governed by the "central focus" of the prima facie case -- that is, whether Defendant treated Plaintiff less favorably than other employees because of his age. *See Sarullo v. United States Postal Serv.,* 352 F.3d 789, 798 (3d Cir.

2003) (citing *Pivirotto*, 191 F.3d at 352).

Assuming without deciding that Plaintiff can make out a prima facie case, Stotler has not produced any evidence on which a reasonable factfinder could disbelieve the Defendants' proffered non-discriminatory reason, namely concerns about prison officials assaulting inmates and the proper reporting of such occurrences, or that it was more likely than not that Stotler's termination was truly about age. Stotler has pointed to no evidence that there was any type of ageism or other discrimination against older employees at SCI-Frackville, nor has he produced any evidence that would suggest that age played any role in the Defendants' decision to terminate him. Thus, summary judgment will be granted on this count.

### 2.      Race Discrimination

Generally in discriminatory firing cases, the plaintiff must prove that (1) he was a member of the protected class; (2) he was qualified for the job from which he was discharged; (3) he was discharged; and, (4) the job position was filled by a person outside the protected class, or the position remained open and Defendants sought to fill the position. *McDonnell*, 411 U.S. at 802. However, in cases where the plaintiff is part of the majority, as Stotler is, the standard for a prima facie case is slightly different.

The Third Circuit Court of Appeals has held that "a plaintiff who brings a 'reverse discrimination' suit under Title VII should be able to establish a prima facie case in the absence of direct evidence of discrimination by presenting sufficient evidence to allow a reasonable fact finder to conclude (given the totality of the circumstances) that the defendant treated plaintiff 'less favorably than others because of [his] race, color, religion, sex, or

national origin.'" *Iadimarco v. Runyon*, 190 F.3d 151, 163 (3d Cir. 1999).

Stotler has not produced any facts that suggest he was treated less favorably than others because of his race. The only employee whose treatment he points to is Barbara Brown, an African-American female officer, who was allowed to resign rather than be terminated after sneaking contraband into prison. Although Stotler was terminated, he has not shown that he asked for resignation instead and was denied that option. In fact, Barnes, the other D.O.C. employee implicated in the incident with Nash, was allowed to resign rather than be terminated; Barnes is white. (*See* Barnes Dep. 67:6-13.) Thus, the other white corrections officer involved in the incident at bar was allowed to resign rather than be terminated, just as Brown was in light of her charges. Plaintiff has not presented evidence that would allow a reasonable factfinder to hold that he was treated less favorably because of his race. He cannot, therefore, make out a prima facie "reverse discrimination" case, and summary judgment will be granted to D.O.C. on Count III.

## II.    Macon and Shannon

### A.    Count I: 42 U.S.C. § 1983 and 42 U.S.C. § 1981

#### 1.    Section 1981

Stotler brings a claim against Macon and Shannon pursuant to 42 U.S.C. § 1981. That statute states in relevant part:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no others.

42 U.S.C. § 1981(a).

To establish a claim under § 1981, a plaintiff must establish: (1) that he is a member of a racial minority; (2) intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in the statute. *Brown v. Philip Morris, Inc.*, 250 F.3d 789, 797 (3d Cir. 2001).

It is unclear from Plaintiff's Complaint and the record as a whole which of the enumerated § 1981 activities he is alleging is the source of discrimination. There is no contract that he was prevented from making or enforcing, he is not being prevented from suing, being a party or giving evidence, nor is he being denied equal benefit of any law. As such, there is no evidence of discrimination regarding any of the enumerated § 1981 activities by Defendants Macon or Shannon, and, therefore, summary judgment will be granted on these claims.

### 2.    Section 1983: First Amendment Retaliation

Stotler also brings claims against Macon and Shannon for violations of 42 U.S.C. § 1983 in both their individual and official capacities. Actions against defendants in their official capacities are "in all other respects other than name" a suit against the government entity. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Thus, to the extent that Defendants Macon and Shannon are being sued in their official capacities, those suits are barred for the reasons discussed above. To the extent Macon and Shannon are being sued in their individual capacities, we will determine the merits of those claims.

First, Stotler claims that Macon and Shannon violated § 1983 by retaliating against him for exercising his First Amendment right to free speech. In order to plead a First

Amendment retaliation claim, "a plaintiff must allege: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Independence Twp.,* 463 F.3d 285, 296 (3d Cir. 2006).

Public employees have a constitutional right to speak out on matters of public concern without fear of retaliation. *McKee v. Hart*, 436 F.3d 165, 169 (3d Cir. 2006) (citing *Brennan v. Norton*, 350 F.3d 399, 412 (3d Cir. 2003)). However, "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). Recently, this Court held that an employee speaking in the context of a D.O.C. investigation is not engaging in protected speech. *Kerstetter v. Pennsylvania Dept. of Corrections*, No. 4:08-cv-1984, 2010 WL 936457, at *7 (M.D. Pa. Mar. 12, 2010).

In this case, the only possible protected speech for which Stotler was subject to retaliation are the answers he gave during the OPR investigation and the subsequent PDC. These statements were made pursuant to his official duties as a corrections officer, not as a citizen, and, therefore, are not protected by the First Amendment. As such, summary judgment will be granted on these claims.

### 3.    Section 1983: Fourth Amendment

Plaintiff also alleged that his Fourth Amendment rights were violated. The Fourth Amendment of United States Constitution protects "[t]he right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Plaintiff

16

has not alleged or produced evidence of any type of search or seizure. As such, the Fourth Amendment is inapposite in this case and summary judgment will be granted on any such claims.

### 4. Section 1983: Sixth Amendment

The Sixth Amendment of the United States Constitution outlines the rights of the accused "in all criminal prosecutions." Stotler was not subject to a criminal prosecution. Therefore, the Sixth Amendment is not applicable and summary judgment will be granted on these claims.

### 5. Section 1983: Fourteenth Amendment

#### a. Procedural Due Process

The Fourteenth Amendment protects a person against government deprivation of life, liberty, or property without due process of law. "Property interests are not created by the Constitution, 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law....'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 540 (1985) (*quoting Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)).

In Pennsylvania, civil service employees "shall not be removed except for just cause." 71 P.S. § 741.807. Pennsylvania courts have applied this statute to corrections officers working in state prisons. *See, e.g., Department of Corrections v. Roche*, 654 A.2d 64, 67 (Pa. Commw. Ct. 1995). The Third Circuit Court of Appeals has held that a "just cause" clause in a valid collective bargaining agreement creates a cognizable property interest that is protected by the Fourteenth Amendment. *Dee v. Borough of Dunmore*, 549 F.3d 225, 231-

17

232 (3d Cir 2008). Likewise, the just cause statute in Pennsylvania creates a cognizable property interest for corrections officers that is protected by the Fourteenth Amendment.

Having determined Plaintiff has a valid property interest, the Court must determine what process was due. Where a public employee has a property interest in his job, he is entitled to "some kind of hearing;" the hearing only need be a "pretermination opportunity to respond." *Edmundson v. Borough of Kennett Square*, 4 F.3d 186, 193 (3d Cir. 1993) (citing *Cleveland Board of Ed. v. Loudermill*, 470 U.S. 532, 547-48 (1985)). The hearing need not be elaborate, but the employee must have notice of the charges, an explanation of the employer's evidence and an opportunity to explain his side of the story. *Id.* The notice may be served any time before the hearing. *Id.* (citing *Gniotek v. City of Philadelphia*, 808 F.2d 241, 244 (3d Cir. 1986)).

Stotler's PDC afforded him all the process that he was due. He was given sufficient notice of the PDC, and he acknowledged receipt of the notice with his signature. The letter also lists the charges against Stotler and the specific policy provisions that he was alleged to have violated. The letter stated that the PDC would be held "to afford [Stotler] an opportunity to respond" to the charges against him. Based on the record, Plaintiff was clearly afforded all the process he was due and there is no genuine issue of material fact that the pre-termination PDC hearing complied with the requirements of *Edmundson and Loudermill*. Thus, summary judgment will be granted in favor of Defendants on these claims.

Plaintiff might also be asserting a claim for a violation of his protected liberty interest. "An employment action implicates a fourteenth amendment liberty interest only if it (1) is based on a 'charge against [the individual] that might seriously damage his standing and associations in the community . . ., for example, that he had been guilty of dishonesty, or

18

immorality' or (2) 'imposes on him a stigma of other disability that foreclosed his freedom to take advantage of other employment opportunities.'" *Robb v. City of Philadelphia*, 733 F.2d 286, 293-94 (3d Cir. 1984) (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 573 (1972)). "Stigma to reputation alone, absent some accompanying deprivation of present or future employment, is not a liberty interest protected by the fourteenth amendment." *Id.* Thus, in the public employment context, "a plaintiff must show a stigma to his reputation *plus* deprivation of some additional right or interest." *Hill v. Borough of Kutztown*, 455 F.3d 225, 236 (3d Cir. 2006) (quoting *Codd v. Velger*, 429 U.S. 624, 628 (1977)). It is required that the Plaintiff satisfy the "stigma-plus" test in order to successfully demonstrate a liberty interest pursuant to the Fourteenth Amendment. Furthermore, to state a claim for stigma, the plaintiff must demonstrate that the stigmatizing information was 'published' or otherwise disseminated by the public employer to the public at large. *Hill*, 455 U.S. at 236.

In the instant case, there is no proof in the record that the potentially stigmatizing information that Stotler was allegedly involved in the assault of an inmate was disseminated to the public at large. Because this information was not publicly announced, he cannot satisfy this requirement for making out a due process violation of a protected liberty interest. Thus, summary judgment will be granted for Defendants Macon and Shannon on any such claims.

### b. Substantive Due Process

Although Plaintiff does not specify which section of the Fourteenth Amendment was violated by Defendants Macon and Shannon, this Court will also consider substantive due process. However, "[w]here a particular Amendment 'provides an explicit textual source of

constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273, 114 S. Ct. 807, 127 L. Ed. 2d 114 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989)). The First Amendment, as discussed above, provides an explicit textual source of constitutional protection to Plaintiff, so any reliance on the substantive component of the Due Process Clause is misplaced. Thus, summary judgment will be granted to Defendants Macon and Shannon on this cause of action.

### c.    Equal Protection

In order to establish an equal protection claim pursuant to § 1983, the plaintiff must prove purposeful discriminatory conduct because intent is a prima facie element of any Constitution-based civil rights discrimination cause of action. *Herrington v. Crestwood School Dist*, No. 3:04-CV-1243, 2006 WL 709219 at, *7 (M.D. Pa. March 17, 2006) (citing *Pennsylvania v. Flaherty*, 983 F.2d 1267, 1273 (3d Cir. 1993). The plaintiff must show disparate impact plus some other indicia of purposeful discrimination. *Id.*

Even if we assume that Plaintiff could show disparate impact, the record before the Court fails to raise any indicia or purposeful race discrimination against Plaintiff. He has, therefore, failed to meet his evidentiary burden and Defendants Macon and Shannon will be granted summary judgment with regard to the Equal Protection claims brought pursuant to § 1983.

### B.    Count II: 42 U.S.C. § 1985

Section 1985 provides a plaintiff with a cause of action where two or more persons

conspire to deprive the plaintiff of his civil rights. 42 U.S.C. § 1985(3). For a plaintiff to establish a claim under the civil rights conspiracy statute, he must show: "(1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons . . . [of] the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States." *Ridgewood Bd. of Educ. v. N.E. ex rel M.E.*, 172 F.3d 238, 253-54 (3d Cir. 1999) (quoting *Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997)); *see also Griffen v. Breckenridge*, 403 U.S. 88, 102 (1971).

In alleging a Section 1985 conspiracy claim,

> The plaintiff's allegations must be supported by facts bearing out the existence of the conspiracy and indicating its broad objectives and the role each defendant allegedly played in carrying out those objectives. Bare conclusory allegations of "conspiracy" or "concerted action" will not suffice to allege a conspiracy. The plaintiff must expressly allege an agreement or make averments of communication, consultation, cooperation, or command from which such an agreement can be inferred.

*Flanagan v. Shively*, 783 F. Supp. 922, 928 (M.D.Pa. 1992) (McClure, J.), *aff'd* 980 F.2d 722 (3d Cir. 1992), *cert. denied*, 510 U.S. 829 (1993).

In the instant action, Plaintiff had not produced any evidence that creates a genuine issue of material fact that there was a conspiracy between Macon, Shannon, and the D.O.C. to deprive him of equal protection of the laws based on his race. The bare accusations of conspiracy are not supported by the facts in the record, which do not contain any proof of an agreement between Macon and Shannon. Instead the record shows that the only connection between Macon and Shannon is the professional relationship that they shared with Shannon acting as superintendent of the prison and Macon acting as an OPR

investigator. Furthermore, even if Plaintiff had shown that there was a conspiracy, there was no proof of racially motivated action on the part of Macon and Shannon acting in concert, as discussed in the previous section on Equal Protection. Thus, summary judgment will be granted in favor of Defendants Macon and Shannon on Count II.

### C. Count V: PHRA Claims

As noted above, Plaintiff has failed to make out a claim pursuant to the PHRA for either race or age discrimination. The reasoning in the sections above apply with equal force to the PHRA claims against Macon and Shannon because the record is devoid of facts that would support an inference that Stoler was treated unfavorably because of his race or his age. As such, summary judgment will be granted in favor of the remaining  defendants on Count V.

### D. Count VI: Civil Conspiracy

A Pennsylvania state conspiracy claim consists of three elements: "(1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for a lawful purpose, (2) an intent to injure without justification, and (3) an overt act 'done in pursuance of the common purpose or design,' and resultant actual legal damage." *Academy Plaza L.L.C.1 v. Bryant Asset Mgmt.*, 2006 WL 1652687, at *13 (Pa. Com. Pl. 2006) (quoting *Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 472 (Pa. Super. Ct. 1979)).

"A single entity cannot conspire with itself and, similarly, agents of a single entity cannot conspire among themselves." *Id*. (quoting *Thomspon*, 412 A.2d at 472); *see also Shingara v. Skiles*, Civ. A. No. 1:04-CV-0621, 2007 WL 210800 (M.D. Pa. Jan. 24, 2007)

(Conner, J.) (citing *Lackner v. Glosser*, 892 A.2d 21, 35 (Pa. Super. Ct. 2006) (finding that because all defendants were members of the state police, they could not be liable for Pennsylvania civil conspiracy).

Both Macon and Shannon are agents of the Pennsylvania D.O.C. As agents of this single entity, they legally cannot conspire with one another. Therefore, Defendants' motion for summary judgment on Count VI will be granted.

## III. Motion to Strike

Defendants Motion to Strike argues that Plaintiff's Counter-Statement of Material Facts was non-responsive and contained affidavits that contained inadmissible hearsay and were not based on personal knowledge. This Court has not relied on any improper evidence in writing this opinion.[5] Furthermore, motions to strike are considered a drastic measure and are generally not granted unless it can be shown that no evidence in support of the allegation would be admissible. *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (3d Cir. 1976); *see also Lyon Fin. Servs. v. Woodlake Imaging, LLC*, No. 04-3334, 2005 U.S. Dist. LEXIS 2011, at *26 (E.D. Pa. Feb. 9, 2005) (stating same). Because the affidavits that were used can be supported by admissible evidence, the Motion to Strike will be denied.

## CONCLUSION

For the reasons stated above, the Court will grant Defendants' Motion for Summary Judgment and deny the Motion to Strike. An appropriate Order follows.

| May 21, 2010 | /s/ A. Richard Caputo |
|---|---|
| Date | A. Richard Caputo |
| | United States District Judge |

---

[5] The Third Circuit Court of Appeals has held that evidence that contains hearsay can be considered on summary judgment, so long as it is capable of being admissible at the time of trial. *Petruzzi IGA Supermarkets, Inc. v. Darling-Delaware Co., Inc.*, 998 F.2d 1224, 1234 n.9 (3d Cir. 1993).

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

JAMES E. STOTLER,

     Plaintiff,

         v.

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS,
ROBERT SHANNON and ERNEST
MACON,

     Defendants.

CIVIL ACTION NO. 3:08-CV-1441

(JUDGE CAPUTO)

<u>**ORDER**</u>

**NOW**, this  21st  day of May, 2010, **IT IS HEREBY ORDERED** that:

(1)    Defendants' Motion for Summary Judgment (Doc. 15) is **GRANTED**.

(2)    Defendants' Motion to Strike Portions of Plaintiff's Counter-Statement of Material Facts (Doc. 33) is **DENIED**.

(3)    **JUDGMENT IS ENTERED** in favor of Defendants.

(4)    The Clerk of Court shall mark this case as **CLOSED**.

/s/ A. Richard Caputo
A. Richard Caputo
United States District Judge